UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

PONCE DE LEON 1403, INC.   CASE NUMBER 11-07920- ESL

           CHAPTER 11

DEBTOR

_____

OPINION AND ORDER

  This case is before the court upon PRLP 2011 Holdings, LLC ("PRLP") motion to stay proceedings pending appeal (Docket No. 144) filed on October 25, 2012. PRLP requests the stay of two (2) Orders entered on June 19, 2012 (dkt. #105) and June 25, 2012 (dkt. #107) respectively.. The first Order (Dkt. No. 105) extended a previous Order (Docket No. 94) authorizing the uses of cash collateral up to and including the date of the plan confirmation hearing. The second Order approved the Disclosure Statement (Docket Nos. 75 & 82) and was entered on June 25, 2012 (Docket No.107). Both Orders were appealed jointly on July 3, 2012 to the United States District Court for the District of Puerto Rico ("District Court") (Docket Nos. 112). PRLP filed a motion for leave to appeal these two (2) Orders to the United States District Court on July 3, 2012 (Docket No. 115) and Ponce de Leon 1403, Inc. ("Debtor") filed its opposition on July 16, 2012 (Docket No. 121). The District Court acknowledged PRLP's appeal on July 23, 2012 (Docket No. 128). The District Court on October 2, 2012 granted PRLP's leave to appeal (Case No. 12-01577 (JAF), Docket No. 8). PRLP alleges that both Orders contain clear factual findings and/or clear errors of law. PRLP alleges that the court erred in granting the Order extending the use of the cash collateral because Debtor failed to evince the "equity cushion" under the fair market value approach pursuant to 11 U.S.C. §363(e) and (p). As to the second Order approving the Disclosure Statement, PRLP alleges that the court erred because the Debtor failed to demonstrate the value of the Metro Plaza collateral pursuant to the fair market value approach contrary to the provisions of 11 U.S.C. §1125(a)(1). For the reasons set forth below the motion is hereby denied.

Background

  Ponce de Leon 1403, Inc. filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on September 16, 2011. On September 20, 2011, the Debtor filed a Motion for the Emergency

Authorization of (1) the Interim and Permanent Use of Cash Collateral; and (2) Entry of a Scheduling Order Regarding Continued Use of Cash Collateral (Docket No. 6). On September 21, 2011, the court granted Debtor's motion requesting interim use of cash collateral until the hearing date of October 7, 2011 in which it will consider the motion for permanent use of cash collateral (Docket No. 7). On September 30, 2011, Debtor filed a motion to submit Amended Petition, Summary of Schedules and Schedules, Statement of Financial Affairs, Amended 20 Largest Unsecured Creditors and Amended Master Address List, which included in its Schedule D-Creditors Holding Secured Claims, Banco Popular de Puerto Rico, predecessor to PRLP, as a secured creditor with a claim of $14,723,989 secured by Metro Plaza Towers Condominium Apartments, 47 apartments, commercial area and parkings (Docket No. 14, Schedule D-Creditors Holding Secured Claims). On October 5, 2011, PRLP filed a Notice of Transfer of Claim pursuant to Fed. R. Bankr. P. 3001(e)(2) by which it informed the court that Banco Popular de Puerto Rico's claim had been transferred to PRLP (Docket No. 23).

On October 7, 2011, a hearing was held in which the court ordered the following: "1. Parties have agreed to the use of the following amounts constituting cash collateral of PRLP 2011 $61,280.44; under the same terms of the [O]rder entered on 09/21/11 (#7), up to October 14, 2011, and in addition to the $26,745 already approved. The court so approves. 2. The parties shall file an agreement on or before October 14, 2011; or move the court informing their respective positions. 3. Debtor's request for authorization to pay pre-petition claims (#9) is hereby granted in the amounts and under the conditions in the [O]rder authorizing use of cash collateral. Order due by 10/14/2011 (Docket No. 24). Subsequently, on October 27, 2011, the parties filed a joint Stipulation on the Use of Cash Collateral and Adequate Protection in which the parties agreed that the limited use of certain of PRLP's cash collateral would be solely for the "Permitted Expenditures" listed in the Budget (Docket No. 38, Exhibit I) for the months of October, November and December 2011, ending on December 31, 2011 and the parties also detailed the adequate protection Debtor had to provide to PRLP (Docket No. 38). On December 14, 2011, the Order approving the stipulation was granted (Docket No. 47).

On February 15, 2012, the parties jointly filed a Second Stipulation on the Use of Cash

Collateral and Adequate Protection by which PRLP has authorized Debtor to use certain of PRLP's cash collateral until April 30, 2012 under the terms and conditions of adequate protection detailed in the stipulation (Docket No. 60). On March 13, 2012, a hearing was held in which the court Ordered the following: "(1) There being no opposition, the request for use of cash collateral and adequate protection (docket #60) is hereby granted. (2) Motion to extend exclusivity period (docket #65) is hereby granted (Docket No. 66). On April 13, 2012, Debtor filed its Disclosure Statement (Docket No. 75) and its Chapter 11 Plan of Reorganization (Docket No. 76). On May 8, 2012, the Debtor filed a Motion to Supplement and Clarify Disclosure Statement and Plan (Docket No. 82). On June 8, 2012, PRLP filed its Objection to Approval of Debtor's Disclosure Statement by which it argued that; (i) the Disclosure Statement does not contain adequate information regarding the type of financing involved to distribute 100% to the allowed unsecured claims, given that Debtor will only derive monies from the sale of apartment units and commercial spaces; (ii) Disclosure Statement fails to inform creditors that for the Plan to be feasible, PRLP needs to consent to the use of its collateral for that purpose; (iii) the Disclosure Statement does not contain sufficient information regarding the value of the tax credits the Debtor wants to sell; (iv) it fails to disclose and provide documentation regarding the value of the real property determined by Debtor in Exhibit 3, which is fully encumbered by PRLP; (v) Debtor does not disclose the "activities" that will fully fund the Plan; (vi) the court does not need to consider or approve a Disclosure Statement for a Plan that is unconformable on its face since it fails to satisfy the feasibility requirements of 11 U.S.C. §1129(a)(11) due to the following: (a) the feasibility of the Plan hinges on two items; namely (1) the cash derived from the sale of PRLP's collateral, the real property and (2) the proceeds of the sale of the tax credits. Debtor has failed to show that these two strategies (mechanisms) are available (viable) to fund the Plan; and (vii) the Plan discriminates unfairly because the three (3) proposed alternatives (scenarios) do not provide fair and equitable treatment on PRLP's secured claims and violates the absolute priority rule (Docket No. 88). On June 12, 2012, debtor filed a Motion for the Authorization of (1) the Permanent Use of Cash Collateral; and (2) Request that Hearing to Consider Use of Cash Collateral be Held on June 19, 2012 (Docket No. 90). On June 12, 2012, the Debtor filed an Urgent Motion Requesting Order Authorizing Expedited and Limited Discovery in

Preparation for the Disclosure Statement Hearing to Held on June 19, 2012 (Docket No. 91). On June 13, 2012, the court granted Debtor's request for limited discovery in preparation for the Disclosure Statement hearing (Docket No. 93). On June 14, 2012, the court granted debtor's request for interim cash collateral in its Interim Order Authorizing Debtor-in-Possession to Use Cash Collateral, Granting Replacement Liens and Other Adequate Protection, Setting Final Hearing, and Affording Other Related Relief in which the court's relief was premised on the finding that; "[a]n immediate and critical need exists for the Debtor to obtain access to funds in order to continue the operation of its business. Without such funds, the Debtor will not be able to pay its payroll and other operating expenses and obtain goods and services needed to carry on its business. Accordingly, interim authorization to use cash collateral is appropriate under Bankruptcy Rule 4001(b)(2), in order to avoid immediate and irreparable harm to the estate pending a final hearing" (Docket No. 94, pg. 2).

On June 14, 2012, Debtor filed its Reply to Objection to Approval of Disclosure Statement Filed by PRLP arguing that: (i) PRLP's argument regarding the alleged violation of the absolute priority rule is unfounded because the general unsecured creditors are included in the Plan under Class 3 and pursuant to the Plan they will be paid after the secured claim owed to PRLP is fully paid; (ii) PRLP alleges that the Debtor's Disclosure Statement should not be approved because Debtor's Plan is fatally flawed and is unconfirmable on its face, but has failed to provide evidence to rebut the financial information and projections that were included as part of the Disclosure Statement; (iii) Article XIV of the Disclosure Statement details that the source of funding for the Plan will be generated by the following; (a) mostly from the sale of the apartment units and commercial spaces of the Metro Plaza Towers Projects and (b) as an additional component the revenue obtained from the tax credits will be used to accelerate the payment to creditors; (iv) to provide sufficient information to the creditors regarding the feasibility of the Plan the Debtor included in its Disclosure Statement the following exhibits; (a) Exhibit 3: Price List for the residential units which was prepared using the historical sales data of the Debtor and the existing prices for the apartment units which are comparable to the sales prices of the apartment units; (b) Exhibit 5A-Projected Statement of Cash Flows submitted in support of the feasibility of the plan by

- 4 -

which Debtor establishes that if the post-petition sales pattern is maintained it will be able to fully pay all of its claims in conformity with the Plan provisions; (v) PRLP has not offered any evidence that establishes that Debtor's price list is inadequate or misleading. "On the contrary, PRLP knows first hand that the Debtor has been able to sell the residential units at relatively the sales prices it is proposing. The Debtor has already submitted three budgets for the use of cash collateral which provide the actual sales price of the units the Debtor has consistently sold post-petition. These budgets were not premised on assumptions, but on options for purchase received by the Debtor. Therefore, the sales prices proposed by the Debtor are fairly accurate and consistent with the offers and sales achieved post-petition" (Docket No. 95, pg. 7, paragraph #17) ;(vi) the three (3) different scenarios proposed by Debtor to satisfy PRLP's claim is a confirmation issue that is premature at this time; and (vi) since the filing of Debtor's bankruptcy petition, Debtor has paid PRLP over $2 million dollars due to its consistent sales patterns of which PRLP has been the direct beneficiary of the reorganization process (Docket No. 95).

On June 18, 2012, PRLP filed its Opposition to Request for Permanent Use of Cash Collateral arguing that; (i) the Debtor has the burden under 11 U.S.C. §363(p) on the issue of sufficient adequate protection to prove that the value of its collateral exceeds the amount of its allowed claim; (ii) Debtor has failed to disclose any evidence of valuation of collateral, such as a reliable real estate appraisal report, an appraiser's testimony to substantiate the $19 million value assigned to its real estate property assets and PRLP's collateral; and thus the alleged "equity cushion;" and (iii) PRLP's lien already extends to Debtors' post-petition cash collateral and is also part of its replacement liens pursuant to the First and Second Stipulation for the use of cash collateral (Docket No. 102). On June 19, 2012, a hearing was held to consider Debtor's Disclosure Statement and its request to use cash collateral.

*Order entered on June 19, 2012 (Docket No. 105) which is on Appeal*

The court held the following:

1. After considering the disclosure statement filed by the Debtor (dkt. #75), as supplemented by information on tax credits (dkt. #82), and the testimony of Ms. Barroso, the court concludes that the disclosed value of the properties pending to be sold (34 units) is adequate as the same is based on actual post petition sales, albeit with a minimal difference of 1%, and finds that there is adequate information. Therefore, the disclosure statement, as supplemented, and clarified

in open court is hereby approved. A separate Order will be entered.

2. There being no opposition, the Debtor's motion requesting clarification of Order (dkt. #96) is hereby granted. The amount owed to PRLP should have stated as being $14,600,000 and not $45,000,000.

3. After considering the range of value of the properties pending to be sold ($15-$18 million), the amount of secured debt owed to PRLP ($11.5 to $11.7 million), the history of post-petition sales (13, that is, one per month), the statutory requirements that maintenance fees be paid, and the amount of critical expenses outlined in the budget submitted by the Debtor in its motion for use of cash collateral (dkt. #90), the court finds that payment to PRLP of 70% of the sale of individual units constitutes adequate protection. Consequently, the order authorizing the use of cash collateral (dkt. #94) is hereby extended up to and including the date of the hearing on confirmation to be scheduled.

4. Audio record to be filed." (Docket No. 105).

Standard Under Fed. R. Bankr. P. 8005

A motion for a stay pending appeal under Fed. R. Bankr. P. 8005 is determined pursuant to the four-part test for granting preliminary relief, that is,

(1) there is a likelihood of success on the merits of the appeal;

(2) the movant will suffer irreparable harm if a stay is not granted;

(3) the harm to the movant if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

(4) the public interest would not be affected by the issuance of the stay.

Pye v. Excel Case Ready, 238 F.3d 69 (1st Cir. 2001); In re Alfaro, 221 B.R. 927 (B.A.P. 1st Cir. 1998).

A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant. In re Lickman, 301 B.R. 739 (Bankr. M.D. Fla. 2003). In order to grant the motion for stay pending appeal all four prongs must be satisfied. In re Handel, 242 B.R. 789, 791 (Bankr. D. Mass. 1999). Failure to meet the four prongs dooms the motion. Eck v. Dodge Chemical Co. (In re Power Recovery Sys., Inc.) 950 F. 2d 798, 804 ( 1st Cir. 1991).

Discussion

To find that there is a likelihood that PRLP will prevail on appeal based on the same arguments presented to this court would mean that the court should vacate both Orders; namely the

- 6 -

Order granting the Disclosure Statement and the Order granting the use of cash collateral until the confirmation hearing. The court is not convinced by PRLP that it should vacate its Orders.

*Order approving the Disclosure Statement*

The court's findings that the use by Debtor of actual post-petition sales which is similar to the comparable sales approach; and thus provides adequate information as the value of the residential properties is in conformity with 11 U.S.C. §1125(b)(1). Section 1125(b)(1) provides in pertinent part that; "[t]he court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets." 11 U.S.C. §1125(b)(1). At the time of the hearing regarding the Disclosure Statement, there were 34 residential units (8 of which are pent houses whose average unit price is $700,000) whose approximately average unit price is calculated in the amount of $352,000. The Debtor at the hearing informed the court that of the last three units sold, two residential units sold for $350,000. According to the Debtor the value of the commercial space is approximately $3,174,300 (Docket No. 75, Exhibit 5). The court notes that PRLP did not present any type of valuation rebutting Debtor's valuation of the real estate properties based on post-petition sales.

As to the second prong, PRLP argues that it will suffer irreparable harm if Debtor's Plan were to be confirmed prior to the District's Court ruling regarding the Order confirming the Disclosure Statement since it would render the appeal moot and "it will have the effect of 'bind[ing] the debtor... and any creditor... whether or not such creditor... has accepted the plan'" (Docket No. 144, pg. 7). The court finds that PRLP's argument is unfounded and undermines the importance of the plan confirmation process and simply assumes that there will be a secured creditor cramdown under 11 U.S.C. §1129(b)(2)(4). Moreover, "the inadequacy of disclosure can only injure a creditor if the plan is eventually confirmed. But, just because the bankruptcy court has approved the disclosure statement doesn't mean the plan will be approved. The creditors still have to vote, and the bankruptcy court still must determine that the plan complies with the Code...Before the bankruptcy court passes on the plan, there is no way of knowing whether the allegedly inadequate disclosure prejudices anyone." In re Worldcom, Inc., 2003 U.S. Dist. Lexis 11160, at *16 (S.D.N.Y. June 30, 2003) citing Everett v. Perez (In re Perez), 30 F. 3d 1209, 1216 (9th Cir. 1994). The court

finds that PRLP has failed to satisfy the first two (2) prongs of the test regarding the motion for stay pending appeal of the Order approving the Disclosure Statement; thus it need not go any further with its analysis.

*Order granting the Use of Cash Collateral until Plan Confirmation Hearing*

The court's ruling that payment to PRLP of 70% of the sale of the individual units constitute adequate protection pursuant to 11 U.S.C. §§363(e) and 361 is based on its findings regarding the range of value of the properties pending to be sold ( $15 -$18 million), the amount of secured debt owed to PRLP ($11.5 to 11. 7 million), the history of post-petition sales (13 units, one per month), the statutory requirement that maintenance fees be paid, and the amount of critical expenses outlined in the budget submitted by the Debtor (Docket No. 90).  Thus, the court found that PRLP was adequately protected due to its finding of a sufficient equity cushion in the real estate properties which was partly based on actual post-petition sales.  The court notes that PRLP did not present any type of evidence contradicting (rebutting) Debtor's valuation of the real estate properties pending to be sold.

As to the second prong of the test for a motion for a stay pending appeal, PRLP did not present any argument as to why it will suffer irreparable harm if the stay is not granted. The court finds that PRLP has failed to satisfy the first two (2) prongs of the test regarding the motion  for stay pending appeal of the Order approving the use of the cash collateral until the confirmation hearing; thus it need not go any further with its analysis.

Conclusion

In view of the foregoing, the court finds that the PRLP has failed to establish a likelihood to succeed on the merits or show irreparable harm.  Lastly, the court does not find public policy to be an issue at this juncture.

Therefore, PRLP's motion for stay pending appeal is hereby denied.

SO ORDERED.

Dated this 20th of November, 2012, in San Juan, Puerto Rico.

Enrique S. Lamoutte
United States Bankruptcy Court